Anthony O'BOYLE et al., Doing Business under the Name and Style of Liberty Dry Dock & Repair Company, Libelant Appellant, v. THE Barges EDDIE, EDGAR, JR., and BENJAMIN H. WARFORD, Their Tackle, etc.; W. F. & R. BUILDERS, Inc., Claimant Appellee.

(Circuit Court of Appeals, Second Circuit. June 1, 1925.)

No. 350.

Appeal from the District Court of the United States for the Southern District of New York.

Macklin, Brown & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellants.

Foley & Martin, of New York City (James A. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

PER CURIAM. Decree (8 F.[2d] 63) affirmed, with costs.

———

## In re DAVIS.

(District Court, S. D. New York. April 13, 1925.)

Bankruptcy ⬬175—Transfer of property by bankrupt held fraudulent.

An assignment of accounts by bankrupt *held* fraudulent, and set aside.

In Bankruptcy. In the matter of Jack Davis, trading as J. Davis & Co., bankrupt. On review of order of special master. Affirmed.

Shaine & Weinrib, of New York City (Maurice L. Shaine, of New York City, of counsel), for receiver.

Hartman & Levy, of New York City (Hugo Levy, of New York City, of counsel), for claimant.

KNOX, District Judge. A consideration of the evidence taken before the special master upon this proceeding leaves me with the distinct impression that petitioner, in taking the alleged assignment of accounts from the bankrupt, and in paying the alleged consideration therefor, was nothing more or less than a "dummy," through whom fraud was perpetrated upon the creditors of this estate. The transaction seems to me to have been of a character as to repel the presumption that men are honest, and do not ordinarily commit fraud or act in bad faith.

8 F.(2d)—5

It bears but few of the earmarks which are usually to be found in dealings between an assignor and assignee. First, there is the manner in which the bankrupt and petitioner were brought into contact; secondly, there is the fact that the negotiations of the parties were so speedily conducted and concluded, without any real investigation of the bankrupt's financial condition. This is particularly noteworthy, when it is recalled that petitioner never before participated in a similar transaction. Thirdly, it seems strange that petitioner should have been active in seeing to it that the bankrupt, with whom he had but passing acquaintance, was paid in cash, instead of requiring him to deposit the check for the alleged consideration in the ordinary course of business. Still further, it seems most unusual that, in order to carry out this transaction, the petitioner should borrow the money advanced to the bankrupt, and that he should obtain the loan from a man with whom the nephew, by marriage, of the bankrupt was associated.

The conduct of the petitioner, I think, was of a nature which permits one to say that there was here "a fraudulent turning away from a knowledge of facts which the res gestæ would suggest to a prudent mind." Jones v. Smith, 1 Hare, 55.

The report of the special master will be confirmed.